*See dissenting opinion*
Filed 12/22/20

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074939 |
| v. | (Super.Ct.No. RIF103852) |
| DERRICK ANTHONY SCOTT, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  David A. Gunn, Judge. Dismissed.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A decade after his conviction for attempted murder, defendant and appellant Derrick Anthony Scott filed an unsuccessful petition in the trial court to set it aside under Penal Code section 1170.95.[1]  On appeal, his counsel filed a brief asserting no grounds for relief.  Scott was invited to file a brief of his own but did not.  Following the law that the Court of Appeal generally has applied to postjudgment appeals in the last decade, we

_____

[1] Further statutory references are to the Penal Code.

dismiss the appeal as abandoned.  We believe that we typically should issue such a dismissal through a concise unpublished order, but we publish this opinion to explain why that practice is our preferred course for most uncontested postjudgment appeals.

## I.  SECTION 1170.95 AND POSTJUDGMENT REVIEW

Effective on the first day of 2019, Senate Bill No. 1437 (Sen. Bill 1437) (Stats. 2018, ch. 1015) amended the state's murder statutes to curtail the use of two theories of vicarious liability for murder.  These theories are grounded in situations where the defendant intended to commit some crime other than murder, yet a death resulted.  The theories are known as felony murder and the natural and probable consequences doctrine.

At the same time, Sen. Bill 1437 enacted section 1170.95 as the procedure for convicted defendants to benefit retroactively from the changes to the law.  Section 1170.95 permits a defendant convicted of murder to file a petition to have the murder conviction vacated and be resentenced.  (§ 1170.95, subd. (a).)  It applies only to defendants convicted under a felony murder or natural and probable consequences theory. (*Ibid.*)  To obtain relief, a defendant must show that he or she could not be convicted today "because of" Sen. Bill 1437's changes to the murder laws.  (§ 1170.95, subd. (a)(3).)

In this case, defendant Scott, convicted of *attempted* murder in 2009, filed a section 1170.95 petition in 2019 and then appealed from its denial.  His appellate counsel filed a brief raising no issues, citing the procedures in *People v. Wende* (1979) 25 Cal.3d 436, 439 (*Wende*), which apply on direct appeal from a conviction when a lawyer for an

2

indigent defendant "finds his case to be wholly frivolous, after a conscientious examination of it." Scott declined an invitation to file his own brief.

On a direct appeal from a conviction, the United States Constitution's right to counsel requires us to review the entire record to determine if there are meritorious issues in the case, even if the defendant's lawyer raised none. (*Wende*, *supra*, 25 Cal.3d 436.) But this is "mandated for only one [situation]—the indigent criminal defendant in his first appeal as of right." (*In re Sade C.* (1996) 13 Cal.4th 952, 986.) In contrast, the prevalent rule in the Court of Appeal has been to dismiss an appeal "as abandoned" when a defendant appeals *from a postjudgment order* but raises no issues. (*People v. Serrano* (2012) 211 Cal.App.4th 496, 504 (*Serrano*).) This rule, which could be called the *Serrano* rule, was reaffirmed in a recent section 1170.95 case that analyzed the appropriate procedures. (See *People v. Cole* (2020) 52 Cal.App.5th 1023, 1040 (*Cole*).)

We would apply the *Serrano* rule and dismiss, in a concise unpublished order, postjudgment criminal appeals where a defendant and lawyer raise no issues. In most such cases, we can readily confirm that, in fact, the defendant is ineligible for relief as a matter of law. For an appeal from the denial of a section 1170.95 petition, that can be the case if, for example, the defendant was convicted of something other than murder; was convicted of murder on a theory that he was the actual killer; or was convicted on a theory that, with intent to kill, he aided the actual killer in a murder. Such situations often are the ones where a lawyer is unable to raise a challenge: the defendant obviously is ineligible for relief.

When such a case comes to us, we typically have the assistance of counsel's *Wende* brief describing the case, the record filed with the appeal, and, often, this court's opinion on direct appeal. In our division, a three-judge panel reviews cases where dismissal appears warranted. It typically can be readily determined that a defendant is obviously ineligible for relief. If a justice wishes to take an uncontested postjudgment appeal for a full review and written opinion, that certainly is within our discretion. But we believe that discretion should be exercised when there is some reason to do so, not as a routine matter. Otherwise, dismissal by order suffices. As our Supreme Court has held in the context of conservatorships, an attorney's brief asserting no arguable issues "provide[s] an adequate basis for the court to dismiss the appeal on its own motion. . . . Nothing is served by requiring a written opinion when the court does not actually decide any contested issues." (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544.)

In a postjudgment appeal, it has been traditional to offer the defendant a chance to personally file a supplemental brief when counsel is unable to raise any issues. (*Serrano*, *supra*, 211 Cal.App.4th at p. 503; *Cole*, *supra*, 52 Cal.App.5th at p. 1039.) This practice ensures that defendants are heard if they wish to be, and it may avoid a later claim of ineffective assistance of counsel by some defendants. When a defendant files a supplemental brief, we would treat the case as contested and adjudicate it by opinion. (*Cole*, *supra*, at p. 1040.)

This case is a typical example of a postjudgment appeal that could be dismissed as abandoned by a simple order.

4

## II.  THIS CASE SHOULD BE DISMISSED

It is clear at a glance that Scott cannot prevail.  Section 1170.95 allows some defendants convicted of *murder* to be resentenced due to recent changes in the law.  Scott, however, was not convicted of murder.  Rather, he was convicted of *attempted* murder, and two lesser crimes.  The first line of section 1170.95 authorizes petitions for only those convicted of murder.  (§ 1170.95, subdivision (a).)  Section 1170.95 does not authorize relief for those convicted of attempted murder.  (*People v. Love* (2020) 55 Cal.App.5th 273, 292.)  This could end the analysis.

On a further look, one can determine from a single sentence of our opinion in Scott's direct appeal (case no. E040370) that he was convicted on a theory of intentionally aiding and abetting an attempted murder (rather than on a natural and probable consequences or felony murder theory).  We stated that Scott was convicted under the standard aiding and abetting jury instruction and quoted it.  That also establishes that Scott is ineligible for section 1170.95 relief.

On yet a further look, one can read the paragraph of our opinion on direct appeal that upheld Scott's attempted murder conviction.  We held that the jury's findings were well supported by the evidence, which showed "Scott was aware of [the shooter's] intent," "Scott facilitated the crime," and Scott "shared [the shooter's] criminal intent."  Scott drove a fellow gang member in a car and stopped so his passenger could shoot at a rival gang member.  This was intentionally aiding and abetting the passenger's crime of attempted murder.  That conviction is permitted under current law.  Scott's conviction

5

obviously was not based on a natural and probable consequences or felony murder theory.

Scott has raised no issues and cannot succeed on a section 1170.95 petition as a matter of law. There is no reason for us to exercise our discretion to conduct a full *Wende* review of the record and issue an opinion affirming. We thus dismiss the appeal as abandoned. We believe such a dismissal of an uncontested appeal typically should be done through a concise unpublished order.

### III. THE HARM OF EXTENDING *WENDE* REVIEW HERE

A portion of the Court of Appeal has recently jettisoned the *Serrano* rule. Indeed, our division generally has opted to have a three-judge panel review each postjudgment appeal and issue a full opinion adjudicating it, even when no issues are raised. Another division has explained in *People v. Flores* (2020) 54 Cal.App.5th 266, 274 (*Flores*) that it believes that the burdens and benefits of independently reviewing every appeal from the denial of a section 1170.95 petition justify such review, citing "the paramount liberty interests of petitioner, the modest fiscal and administrative burdens to the courts, and the possible (while presumably low) risk of a petitioner's unlawful incarceration due to an unreviewed meritorious issue on appeal." (*Ibid*.)

At first blush, this process seems admirable. Why not give incarcerated criminal defendants extra attention to ensure they are not wrongly imprisoned?

The problem is that we spend time on this class of uncontested and typically frivolous cases at the expense of contested ones. The Court of Appeal is a public

6

resource, serving many civil and criminal litigants who wish to have prompt attention paid to their appeals. There are an array of statutory provisions allowing criminal defendants to seek postjudgment relief, and our division recently has been receiving hundreds of such appeals annually. When a defendant *does* raise an appellate issue in one of these postjudgment challenges, we must pay it close attention and decide it carefully, articulating our view with written reasoning. (See Cal. Const., art. VI, § 14.)

Among the scores of postjudgment challenges, however, quite a few defendants seek relief that they obviously do not qualify for, such that (as here) even an experienced lawyer cannot muster an argument on their behalf. To the extent we spend time reviewing records and producing opinions disposing of challenges these defendants do not make, we disserve other litigants whose cases await. These other cases include criminal defendants who might have a meritorious appeal delayed as we spend time on uncontested cases.

To examine the burden and benefit of reviewing postjudgment appeals where an attorney can find no issues, we searched the public electronic databases for our division's cases for one year preceding our work on this opinion.[2] We found that, during that year, our division of eight justices issued 117 written opinions in postjudgment appeals in

_____

[2] This search covered dates from November 20, 2019 through November 19, 2020. We searched for "Wende" and "Fourth District, Division Two" or "Fourth Appellate District, Division Two." We then reviewed the 172 opinions retrieved to exclude those that involved challenges on direct appeal, in order to limit our search to postjudgment challenges, and we excluded duplicate opinions as well. Nearly all are unpublished.

which the defendant's attorney was unable to raise any argument.[3]  Even after our court's independent review and opinion, the defendant prevailed in none of those 117 cases.[4]

To be clear, these 117 cases did *not* include the opinions in which a lawyer raised an issue in a defendant's postjudgment appeal.  We decide many postjudgment appeals where a lawyer raises an issue:  during the year we examined, our division issued opinions in over 60 such contested appeals just from orders on section 1170.95 petitions.  Our division should issue opinions in those *contested* postjudgment appeals.

The 117 appeals are those where, as here, the defendant's counsel could find no issue to raise.  In 29 of the 117 appeals, defendants filed their own brief, even though their counsel raised no issues.  This meant that an issue was raised in the appeal, and we do not oppose writing opinions in such cases.  That leaves 88 cases in which our division issued an opinion where neither counsel nor the defendant raised an issue.

According to the Judicial Council's 2020 Court Statistics Report, in fiscal year 2018-2019, the most recent for which statistics are available, our division filed 333 opinions in criminal appeals and 737 opinions of all types.[5]  This fiscal year timespan is not identical to the period that we searched for postjudgment opinions.  But if we use

---

[3]  The two justices signing on to this opinion authored none of these 117 opinions.

[4]  One hundred six trial court orders were affirmed, and 11 appeals were dismissed.

[5]  These statistics are presented on page 42 of the 2020 Court Statistics Report, which can be found at  https://www.courts.ca.gov/documents/2020-Court-Statistics-Report.pdf.

8

those totals as a yardstick, the 88 opinions that we issued in uncontested postjudgment appeals would comprise 26 percent of our criminal opinions and 12 percent of our opinions in all cases.

Our division's output of opinions has been somewhat higher recently, perhaps in part *because* of so many postjudgment appeals. Nevertheless, we think these statistics make plain that postjudgment appeals where both the lawyer and the defendant raise no issues are a significant percentage of our docket.

The recent enactment of section 1170.95 undoubtedly contributed to the large number of postjudgment appeals. But over half of the 117 uncontested postjudgment appeals that we reviewed from our division involved a claim other than section 1170.95.[6] It is possible that the number of postjudgment appeals will ebb at some point. Yet they also may flow further if the Legislature again creates a fresh avenue for challenge.

Where an eight-justice division is presented with 88 uncontested postjudgment appeals in a year, a substantial portion of our docket, we cannot agree that it presents a "modest fiscal and administrative burden[]" (*Flores*, 54 Cal.App.5th at p. 274) to decide them by independently reading the entire record and crafting written opinions.

---

[6] Fifty-four of the 117 opinions we found adjudicated a section 1170.95 challenge, at least in part. Others involved postjudgment challenges based on sections 17, subdivision (b); 851.8; 1016.8; 1170.18; 1170.19; 1170.91; 1202.45; 1202.46; 1203.3; 1203.4; 1473.7; 1170, subdivision (d); 1170.126; Proposition 57; Senate Bill 136; Senate Bill 620; coram nobis; denial of transcripts; mentally disordered defendant determinations; requests to modify sentences; requests to modify credits; violations of release; challenges to restitution; as well as requests to vacate judgment, withdraw a plea, or recall the sentence.

We further do not think that deciding to review these cases and issue opinions meaningfully decreases the "risk of . . . unlawful incarceration." (*Flores*, 54 Cal.App.5th at p. 274.) In the 117 uncontested postjudgment opinions that we identified, no defendant had his or her conviction held unlawful. Every conviction was affirmed (or, to similar effect, the appeal was dismissed). Had we simply dismissed these cases as abandoned without looking at them, no defendant would have been unlawfully incarcerated. But we do look at them before dismissal, and, in any case in which a justice sees a reason to conduct a more thorough review, we retain discretion to do that.

A defendant's *direct appeal* from his conviction differs markedly from the postjudgment context that we address here. A direct appeal implicates a range of potential issues as wide as the criminal law, and typically it is not immediately obvious whether a defendant has received adequate representation from an appellate lawyer who raises the white flag. Errors may have occurred (for example) in a prejudgment ruling; during jury selection; through trial errors; by closing argument misconduct; or in jury instructions. In contrast, in a postjudgment appeal such as this one, the wisdom of counsel's surrender typically is readily apparent. This case is easy, as Section II above shows. A busy appellate court should not extend *Wende* to frivolous postjudgment appeals. (See *People v. Gallo*, (2020) 57 Cal.App.5th 594, 601-603 [Menetrez, J., dissenting].)

We are obligated to serve the public, and independently reviewing records to craft unneeded opinions in uncontested cases does not do so. Our court system is heavily

10

burdened, but by choosing to issue scores of opinions in cases like this one *we* are the ones doing the burdening.  That burden falls on other litigants.

### IV.  DISPOSITION

The appeal is dismissed as abandoned.

CERTIFIED FOR PUBLICATION


RAPHAEL _____

J.


I concur:

MENETREZ _____

J.

*People v. Scott*, E074939

MILLER, Acting P. J., Dissenting

I recognize that in *People v. Cole* (2020) 52 Cal.App.5th 1023, review granted October 14, 2020, S264278, the court held "that *Wende*'s constitutional underpinnings do not apply to appeals from the denial of postconviction relief." (*Id.* at p. 1028.) Moreover, we have "no independent duty to review the record for reasonably arguable issues," and when a defendant fails to file a supplemental brief, "the Court of Appeal *may* dismiss the appeal as abandoned." (*Id.* at p. 1039, italics added.) Recently, in *People v. Flores* (2020) 54 Cal.App.5th 266 (*Flores*), our colleagues in Division Three of the Fourth Appellate District held "that when an appointed counsel files a *Wende* brief in an appeal from a summary denial of a section 1170.95 petition, a Court of Appeal is not required to independently review the entire record, but the court can and should do so in in interests of justice. This is a pure question of law, so our review is de novo." (*Id.* at p. 269; see *People v. Allison* (2020) 55 Cal.App.5th 449, 456 ["[W]e have the discretion to review the record in the interests of justice."].) Such a procedure provides defendants an added layer of due process while consuming comparatively little judicial resources. The *Flores* court went on to reiterate that "while we agree with the primary holding in Cole— that we are not required to conduct an independent review of the record because this is not defendant's first appeal as a matter of right—we have found no legal authority that *prohibits* us from doing so in the interests of justice." (*Id.* at p. 273.) I agree with our colleagues in *Flores*.

1

"There are three well-established 'due process' criteria that are helpful to courts when establishing procedures in the interests of justice: 'They are (1) "the private interests at stake," (2) "the government's interests," and (3) "the risk that the procedures used will lead to erroneous decisions." ' " (*Flores*, *supra*, 54 Cal.App.5th at pp. 273-274.)

As noted by the court in *Flores*, "[i]n an appeal from a denial of a section 1170.95 petition, the private interests at stake are the liberty interests of the person who may be in custody and seeking release. [Citation.] The government's interests are the appellate court's interests in making sure there was a correct ruling in the trial court, while balancing fiscal and administrative concerns. [Citation.] And finally, the risk of an erroneous ruling is present if appointed counsel failed to identify a meritorious (reversible) issue on appeal, and the appellate court also failed to identify that issue by failing to conduct an independent review." (*Flores*, *supra*, 54 Cal.App.5th at p. 274.) The court went on to state that "[w]hen we weigh the paramount liberty interests of the petitioner, the modest fiscal and administrative burdens to the courts, and the possible (while presumably low) risk of a petitioner's unlawful incarceration due to an unreviewed meritorious issue on appeal, we lean toward caution. That is, although it is not required under law, we think an appellate court can and should independently review the record on appeal when an indigent defendant's appointed counsel has filed a *Wende* brief on a postjudgment appeal from a summary denial of a section 1170.95 petition (regardless of whether the petitioner has filed a supplemental brief.)" (*Ibid.*)

I agree with *Flores* that dismissal is discretionary, and that I can and should independently review the record on appeal in the interests of justice. (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544, fn. 8.)

Thus, after independently reviewing the record for potential error and finding no arguable issues, I would affirm the judgment.

MILLER

Acting P. J.
